**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**CHARLOTTE OSWALT**                                                        **PLAINTIFF**

**vs.**                                                        **Civil Action No. 3:03-cv-340 HTW-LRA**

**MISSISSIPPI DEPARTMENT OF
CORRECTIONS, ET AL.**                                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

At an earlier day, this cause came on for trial. This court empaneled a jury, and plaintiff presented her evidence over a two-day period. At the end of the plaintiff's case-in-chief, the defendants herein submitted their Motion for Judgment as a Matter of Law under Rule 50,[1] Federal Rules of Civil Procedure. After hearing argument of counsel for defendants and argument from *pro se* plaintiff, this court thereafter dismissed the plaintiff's claim. Now this court issues its Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52.[2]

---

[1] Rule 50, Federal Rules of Civil Procedure, provides in part:

(a) Judgment as a Matter of Law. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

[2] Rule 52, Federal Rules of Civil Procedure, provides in part:

(a) Findings and Conclusions. In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

The plaintiff here is Charlotte Oswalt.  The defendants named in plaintiff's complaint are:  the Mississippi Department of Corrections ("MDOC");  Christopher Epps ("Epps"), the Commissioner of Corrections (injunctive relief purposes only);  Deputy Commissioner of Community Services Lora Cole;  Jo Burton ("Burton"), a former supervisor of the plaintiff;  and Steven McCraney ("McCraney"), the plaintiff's former direct supervisor.

Plaintiff claims that defendant McCraney sexually harassed her on July 28, 1996, by making an inappropriate comment about her breasts in front of other employees. She accuses Burton of sexually harassing her on April 27, 2001, by telling a co-worker that Oswalt was sexually active with a number of MDOC employees.  Plaintiff submitted grievances against McCraney and Burton.  Afterwards, says plaintiff, on September 18, 2001, she was terminated from her employment in retaliation for filing those grievances. Plaintiff claims that defendants are liable to her under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. §2000e *et seq.*[3]  Defendants have denied her accusations.  As argued by defendants, plaintiff cannot present a *prima facie* case and, even if she could, her theory of liability is completely unraveled by defendants' non-discriminatory reasons for terminating plaintiff.

---

[3]Title 42 U.S.C. § 2000e-2 (2006) states in pertinent part:
It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

This court has subject matter jurisdiction over this dispute pursuant to Title 28 U.S.C. § 1331,[4] federal question subject matter jurisdiction. Title VII is a federal enactment which is plaintiff's juridical bedrock for bringing this lawsuit.

## I. Background

Plaintiff, a former field officer with the Mississippi Department of Corrections ("MDOC" or, at times, "Department"), was terminated from her employment by defendant, then Interim Deputy Commissioner Lora Cole ("Cole"), with the approval of then Commissioner Robert Johnson. Commissioner Johnson is not a defendant here. The Department asserts it terminated Oswalt for holding seventy-six (76) money orders for restitution and supervision fees totaling over seven thousand dollars ($7,000.00) for a period of almost four years. According to the Department, this violation, itself grave enough for termination, was exacerbated by plaintiff having received a reprimand earlier within that year. Plaintiff had been reprimanded for misuse of a state vehicle.

Plaintiff champions a different version. She says she was terminated for using the Department's grievance system to report the misdeeds of other employees.[5] Plaintiff submitted her charge to the Equal Employment Opportunity Commission

---

[4]Title 28 U.S.C. § 1331 states:
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

[5] Plaintiff did not allege retaliation for filing her EEOC complaint, but for filing grievances through the MDOC internal grievance system. Defendants did not raise any argument regarding whether filing internal grievances with the Department constituted "protected activity" under Title VII. The Fifth Circuit has accepted that utilizing an internal reporting mechanism satisfies the requirement of engaging in "protected activity." *See, e.g.*, *Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002)(Fifth Circuit reversed grant of summary judgment finding that plaintiff had created triable issues of fact regarding whether there was a causal connection between her internal reporting of sexual harassment and subsequent denial of promotion).

("EEOC"), which, without reaching any finding, issued plaintiff a Right-to-Sue letter. There has been no evidence offered that plaintiff included the incident with Steven McCraney in her charge to the EEOC. After receiving her Right-to-Sue letter, plaintiff filed this lawsuit.

## II. The Jurisprudence

### A. *Pro Se* Status

The court affords deference to *pro se* litigants' pleadings, not holding these litigants to the same standard as licensed attorneys when framing issues for resolution. *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007); *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Drake v. Nicholson*, 324 Fed.Appx. 328, 329 n.1 (5th Cir. 2009). District courts in the Fifth Circuit allow *pro se* plaintiffs "'every opportunity' to state a claim for relief." *Muthukumar v. Univ. of Tex. at Dallas*, 2010 WL 5287530 at 2 (N.D. Tex. 2010); *McClellan v. Hinijosa*, 2010 WL 4520978 at 1 (N.D. Tex. 2010); *In re Meany*, 2000 WL 666378 at 1 (E.D.La.).

The Fifth Circuit, despite deference to a *pro se* litigant's status, still requires a *pro se* plaintiff to meet her proof and production burden to establish a *prima facie* case. *See Drake*, 324 Fed.Appx. 328. In *Drake*, a case in which a *pro se* plaintiff alleged Title VII retaliation and discrimination, the Fifth Circuit affirmed the district court's summary judgment, finding, *inter alia*, that the plaintiff had failed to provide evidence of a causal link between his reporting of discrimination and his subsequent termination from employment. The district court appropriately expected plaintiff to understand the governing procedural rules and to support his theory of the case with competent

4

evidence.  *See generally Woodford v. Ngo*, 548 U.S. 81, 103 126 S.Ct. 2378, 2393, 165 L.Ed.2d 368 (2006) (stating a prisoner must comply with requirements to exhaust available remedies before filing suit under the Prison Litigation Reform Act.  In response to prisoner's argument that "requiring proper exhaustion" is harsh for untrained, *pro se* prisoners, the Court states, "[t]his argument overlooks [. . .] the fact that prisoners who litigate in federal court generally proceed *pro se* and are forced to comply with numerous unforgiving deadlines and other procedural requirements.")

      The court is not obligated to sit second chair for a *pro se* plaintiff.  The *pro se* plaintiff simply is expected to be her own legal representative in court.  *See generally James v. Fiesta Food Mart, Inc.*, 393 Fed.Appx. 220 (5th Cir. 2010)(Fifth Circuit affirmed grant of summary judgment in Title VII case when *pro se* plaintiff failed to carry his burden of proof to establish a *prima facie* case of discrimination.); *see generally Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007)(Court refused to consider issues not briefed by a *pro se* plaintiff, stating "[a]lthough we liberally construe *pro se* briefs, such litigants must still brief contentions in order to preserve them.  This court 'will not raise and discuss legal issues that [a *pro se* litigant] has failed to assert.'").

    **B.  Title VII Retaliation**

      A plaintiff, to prevail in a lawsuit alleging Title VII retaliation, must successfully meet her burden of proof dictated by the *McDonnell Douglas* burden-shifting framework.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001).  Within this framework, the plaintiff bears the initial burden to establish a *prima facie* case of

discrimination or retaliation. *Long v. Easterfield College*, 88 F.3d 300, 304-305 (5th Cir. 1996)

A prima facie case of retaliation under Title VII, requires a plaintiff to show "(1) that [s]he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F3d 137, 140 (5th Cir. 1996)(*citing Long*, 88 F.3d at 304).

"[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003)(internal citations omitted). Specifically, plaintiff must show the decision-maker who took the adverse action was aware of the protected activity. *See Ramirez v. Gonzalez*, 225 Fed.Appx. 203, 210 (5th Cir. 2007). Knowledge of a protected activity may be imputed to the decision-maker if the plaintiff can show that others with a discriminatory or retaliatory animus recommended termination to the decision-maker, and the decision-maker merely "rubber-stamped" those recommendations. *Long*, 88 F.3d at 307 (5th Cir. 1996). If the decision-maker fires the employee based on his own independent assessment, any retaliatory animus by others is cut off, and there is no causal link. *Id*.

When no direct evidence of retaliation is available, a plaintiff must establish causation by "circumstantial evidence creating a rebuttable presumption of retaliation." *Febela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414-415. The burden of production then shifts to the employer to show a legitimate, non-discriminatory reason

6

for the action. *Rios*, 252 F.3d at 380. If the defendant offers a legitimate reason for his conduct, then the burden shifts to plaintiff to show that the "proffered reason is a pretext for retaliation." *Id* (internal citation omitted).

    **C. Rule 50 Standard**

The court must grant a Rule 50 motion for judgment as a matter of law when, after "a party has been fully heard on an issue," the court can find "no legally sufficient evidentiary basis for a reasonable jury to find for that party." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000). The court's analysis should be "analogous" to the Rule 56 standard for a ruling on a motion for summary judgment, and this analysis should consider "the record 'taken as a whole.'" *Id* (internal citations omitted). Whether judgment as a matter of law is appropriate depends on multiple factors such as "the strength of plaintiff's *prima facie* case, the probative value of the proof" provided by the defendant, and other factors specific to the case. *Id* at 148-49.

Oswalt has met the first two elements of a retaliation claim: she engaged in protected activity when she filed written grievances against McCraney and Burton, and she suffered an adverse employment action when she was terminated from her position with MDOC. Oswalt has failed, however, to offer any evidence other than conclusory allegations and speculation for any causal connection between the two and, thus, has failed to prove a *prima facie* case for retaliation.

Oswalt has also failed to establish a *prima facie* case for sexual harassment. The conduct she complains of by McCraney and Burton does not rise to the level of severity or pervasiveness to support such a claim. The court now reviews the evidence.

### III.  The Evidence

**A.  Sexual Harassment**

Plaintiff did not pursue sexual harassment claims against the defendants, but alleged prior sexual harassment, and her grievances for same, as a foundation for her claim of retaliation.[6] Following are the incidences of "sexual harassment" she claims led to her grievances, and ultimately her alleged retaliatory firing.

1.  Steven McCraney Incident

Georgia Laird, plaintiff's witness, testified that on or about July 29, 1996, while defendant McCraney and plaintiff Oswalt were at a "teamwork conference" at the Roosevelt State Park in Morton, Mississippi, the participants were asked where in the State of Tennessee they would like to go.  McCraney answered "Charlee-Wood," which the plaintiff took as an unwarranted and uninvited sexual remark about the size of her breasts.  Plaintiff says she was hurt and embarrassed.

The plaintiff thereafter filed a grievance with her employer, the MDOC.  Her filed, written grievance was authorized by MDOC's Policy and Procedure Handbook.

---

[6] Plaintiff asserted claims for sexual harassment in her complaint for the incidences involving McCraney and Burton.  Before trial she conceded that she did not include these incidences in her EEOC complaint, but made the EEOC complaint solely for retaliation.  Further, she conceded at trial that she was not pursuing claims of sexual harassment, but charging the defendants with retaliation against her for having filed the grievances.  Trial transcript from Sept. 12, 2006 at 134-135 (regarding McCraney), 145 (regarding Burton).

Plaintiff's supervisor, Bill Lunsford, who also testified to the same incident, telephoned McCraney and told him to apologize. McCraney did so, verbally and in writing. Both parties, plaintiff and McCraney, then signed an agreement that the matter had been resolved by McCraney's apology.

### 2. Jo Burton Incident

Larry Mayo testified that, soon after he was reprimanded for misuse of a state vehicle when he accompanied Oswalt in an MDOC car to pick up Oswalt's child from daycare, defendant Jo Burton called Mayo into her office and told him that plaintiff Oswalt was sexually active with other employees and he should stay away from her. Mayo testified that because he was such a good friend to the plaintiff, he wrote a memo to her telling her what Burton had said. Oswalt then filed an MDOC grievance alleging sexual harassment against Jo Burton.

Oswalt claimed that after she filed her grievance she was not satisfied with how it had been handled by the Department. MDOC had responded that her grievance had not amounted to sexual harassment, but did denote unprofessional conduct on behalf of Burton. Oswalt testified that Burton was demoted as a result of Burton's actions. The evidence in the record showed that Burton's pay was decreased commensurate with her post-demotion position. MDOC Personnel Transaction Request, docket no. 18-2, exhibit C.

**B. Retaliation**

### 1. Defendants' alleged conspiracy

Oswalt claimed that in June, 2001, McCraney was brought back to the Department. He had left the Department some four (4) years before. Oswalt surmises

9

that Burton brought him back to "get her," because of Oswalt's having filed a grievance against Burton. When challenged at trial by the defense on these matters, Oswalt was not able to say that McCraney actually knew about the grievance she had filed against Burton. Still, at trial she persisted in her belief that Burton and McCraney had created an unholy alliance to crucify her.

The next effort to do so, says Oswalt, came when Burton's secretary came into her office and asked her if she had taken a fax from the fax machine that was meant for Burton. Insulted by this theft accusation, Oswalt again filed an MDOC grievance against Burton for sexual harassment for these actions.

McCraney also was busily seeking to undermine plaintiff's job performance, says plaintiff. Oswalt testified that McCraney had supervised her for a short time in 2000 and had written her a memo that she should correct a report. She testified that when he returned in June 2001, he wrote at least three more memos to her about job performance.

He also warned her about complying with the standard operating procedure relative to processing money orders. Field officers were to turn in money orders every other day, or when said sum equaled one hundred dollars ($100.00). Oswalt admitted that this latter criticism was serious, especially since in 1999, a former supervisor had admonished her several times for her job performance and about holding money orders for an extended period of time.

After submitting his memo to plaintiff, McCraney asked his supervisor, Lora Cole, to investigate the large number of money orders in plaintiff's desk. Ms. Cole in turn requested Floyce Rochester, of the Internal Audit Division, to investigate. Rochester

interviewed several persons and determined the source of the money orders, finding money orders for restitution, fines and supervision fees, which had been left in plaintiff's desk or in her unsecured mailbox.

At trial, plaintiff hammered the point that other field officers had retained moneys exceeding the sum of one hundred dollars ($100.00) for more than a few days. Defendants conceded this point, agreeing that at times, the field officers could not locate victims slated to receive restitution. On those occasions, however, the officer was expected to make some suitable arrangement for safekeeping the money. Some officers would deposit the funds in a general account, or request further directions from a supervisor. No field officer who testified at trial was aware of any other field officer who had retained the large sum of money plaintiff had, or for the length of time plaintiff had retained such. Rochester concluded that while some of the money orders retained by plaintiff could not be distributed, many could. Without a doubt, added Rochester, the actions of the plaintiff had violated MDOC Policy and Procedure.

### 2. Oswalt's Administrative Hearing

Cole, upon receiving the investigation report, suspended the plaintiff with pay and set up a hearing for the plaintiff before Hearing Officer David Fondren on August 28, 2001. The hearing officer heard testimony from thirteen witnesses, including the plaintiff who was represented at all times by legal counsel.

Fondren wrote a memorandum to Cole on August 29, 2001, stating that the plaintiff was guilty of violating of Mississippi State Employee Rules as set forth in the Mississippi State Employees' Handbook. He recommended to Cole that the plaintiff be suspended from duty for a period of thirty days and demoted in pay and rank.

Defendant Cole, consistent with the rules for State Employees, considered Fondren's recommendation, but Cole also considered a written reprimand that the plaintiff had received within the past twelve months.

The plaintiff had been disciplined for using her state vehicle to pick up her child from school. Her witness, Larry Mayo, employed by the MDOC, testified that he also had received a written reprimand for misuse of a state vehicle for his involvement in the same incident. Plaintiff admitted that the written reprimand was warranted. She also acknowledged that this reprimand came before she filed a grievance against Burton in April, 2001.

After review of the investigation, Fondren's recommendation, and Oswalt's prior disciplinary action, Cole recommended to Commissioner Johnson that plaintiff be terminated. Commissioner Johnson concurred with the recommendation of Cole, and terminated the plaintiff by correspondence dated September 21, 2001.

### 3. Oswalt's Case at Trial

At trial, the plaintiff called several ex-employees of the Mississippi Department of Corrections who, as the plaintiff, had worked as field officers. She also called some field supervisors to testify. Their testimony was much alike, testifying that in the past, some field officers had held money orders longer than the policy prescribed.

These witnesses, on cross-examination, all admitted that they knew of no other field officer who had held money orders for almost four years, as the plaintiff had, nor had they ever known of any officer who had held the amount that the plaintiff had of over seven thousand dollars ($7,000.00). They each further testified that it would be against the Department Policy and Procedures for a field officer to hold money orders

for the length of time that the plaintiff had held them.  At least one of the plaintiff's witnesses testified he would have taken disciplinary action against an employee for the acts committed by the plaintiff for which she was terminated.

### 4.  Defendants' Reason for Termination

Even, assuming *arguendo*, that plaintiff could sufficiently support a *prima facie* case of retaliation, the defendants would then have the opportunity to articulate a legitimate, nondiscriminatory reason for terminating Oswalt's employment.  Defendants have shown that Oswalt was terminated for failing to process over $7,000 in money orders received from offenders under her supervision, some of which had been held for over four years.  Oswalt previously had been warned that all money orders were to be processed in a timely manner as set out in MDOC's standard operating procedures.  Oswalt did not deny these allegations.

Defendant Cole recommended Oswalt's termination.  Cole was the same person who previously had demoted defendant Burton because of Burton's derogatory remarks about Oswalt.  Oswalt testified that Cole was not motivated by retaliation, but by Oswalt's poor job performance.  Commissioner Johnson made the final employment decision.

MDOC's submitted non-discriminatory reason provided for Oswalt's termination defeats the inference of retaliation raised by Oswalt's attempt to construct a *prima facie* circumstantial evidence case.  If Oswalt had presented a *prima facie* case, judgment as a matter of a law, consequently, would be appropriate unless Oswalt could show that MDOC's reasons for terminating her are pretextual.  *Shackelford v. Deloitte & Touche, LLP*, 190 F.2d 398, 407-408 (5th Cir. 1999).  In order to avoid judgment as a matter of

law, Oswalt had to present evidence that she "would not have been fired in the absence of her having engaged in protected conduct." *Shackelford v. Deloitte & Touche, LLP*, 190 F.2d 398, 409 (5th Cir. 1999)(citing *Long v. Eastfield College*, 88 F.3d 300, 304 n. 4 (5th Cir. 1996)).

Plaintiff's theory of her case is that she first antagonized McCraney by filing a grievance against him; that she later angered Burton when she filed a grievance against her; that Burton positioned McCraney as Oswalt's supervisor so he could "get her"; that he did so by triggering an investigation against her for conduct widely performed by other field officers; and that upon terminating her, Commissioner Johnson was merely rubber-stamping the unlawful acts of McCraney and Burton.

Plaintiff's theory is interesting, but with no evidentiary support. Too many facts in evidence utterly debunk this perspective. Consider, while plaintiff chose to characterize Commissioner Johnson, Cole, Rochester and Fondren as pawns of McCraney and Burton for their alleged conspiracy against plaintiff, the evidence does not show that these MDOC personnel were so manipulable. When McCraney embarrassed plaintiff by his comment of "Charlee-Wood," MDOC supervisor Lunsford directed McCraney to apologize. When Burton indulged in unprofessional conduct towards plaintiff, the MDOC demoted Burton and cut her pay. Plaintiff has no evidence that Commissioner Johnson, Cole, Rochester and Fondren were parties to any "conspiracy to get her," or that they were blindly manipulated. Plaintiff has failed to provide any evidence that Commissioner Johnson, the ultimate decision-maker in her termination, did anything other than to act upon the recommendation of Cole. As to Cole, who recommended

Oswalt's termination, the plaintiff failed to provide any evidence that Cole was influenced by Oswalt having filed prior grievances.

After plaintiff concluded her case-in-chief, defendants moved for judgment as a matter of law. Up to that point, plaintiff had not produced any evidence to show that Cole was motivated by anything other than the plaintiff's poor performance. When arguing against the motion for judgment as a matter of law, the strongest argument plaintiff could offer were allegations that Cole had not been in the her position very long and her lack of familiarity with the procedures for handling the money orders may have made Oswalt's infractions seem more serious than they were. Oswalt argues that Cole should have discussed the money orders with Oswalt before launching an investigation. This conduct does not constitute retaliation.

Further, Cole did not merely recommend termination when she found out about the large number of money orders on Oswalt's desk. Cole ordered an investigation by an independent investigator, which was followed by a hearing in which Oswalt was represented by counsel and had an opportunity to both testify and present witnesses. Oswalt has not called into question Cole's impartiality, nor that of the investigator or hearing officer.

The lack of retaliatory motivation on the part of Johnson, the decision-maker in Oswalt's termination, about the grievances filed by Oswalt, and the paucity of evidence to support retaliatory animus by Cole, defeat Oswalt's effort to show a causal link between her earlier grievances against McCraney and Burton and her ultimate termination. She can neither show a *prima facie* case for retaliation nor can she overcome the defendants' nondiscriminatory reason for her termination.

15

## IV.  Conclusion

This court finds that MDOC has shown a legitimate, non-discriminatory reason for Oswalt's termination.  Oswalt has presented no evidence whatsoever that the reason given for her termination was a pretext for retaliation.  Accordingly, MDOC is entitled to judgment as a matter of law.  This court will enter a separate final judgment in accordance with the local rules.

**SO ORDERED AND ADJUDGED, this the 25th day of August, 2011.**

**s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:03-cv-340 HTW-LRA
Memorandum Opinion and Order